ALL-AMERICAN TRANSPORT, INC., n/k/a All-American, Inc., Plaintiff-Appellee, v. MICHAEL J. HOWLETT, Secretary of State, Defendant-Appellant.

First District (1st Division)   No. 76-925

Opinion filed February 6, 1978.—Rehearing denied March 7, 1978.

William J. Scott, Attorney General, of Chicago (Robert G. Epsteen, Assistant Attorney General, of counsel), for appellant.

Axelrod, Goodman, Steiner & Bazelon, of Chicago (I. Hunce Naiman, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

All-American Transport, Inc., now known as All-American, Inc. (plaintiff), brought an action under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*), to review a decision by the

Illinois Secretary of State, Michael J. Howlett (defendant). After an audit of plaintiff's records, defendant assessed certain tax items against plaintiff. On review, the trial court reversed this decision and defendant has appealed.

There is no dispute concerning the factual basis of the controversy. Plaintiff makes no point concerning the amount of the assessment of $22,273.59 for additional fees due the State of Illinois, $1166.80 for interest thereon and auditors' fees of $491.36, a total of $23,931.75. The assessment is based upon 14 alleged violations during 1971 and 8 during 1972. It is undisputed that during these years all of plaintiff's vehicles involved in the controversy had valid foreign base plates and valid Illinois prorate decals. (Ill. Rev. Stat. 1975, ch. 95½, par. 3—701(2).) It is agreed between the parties that the decisive issue here is whether the 22 acts of transportation engaged in by plaintiff should be classified as interstate or intrastate operations.

■■■ Each and all of the transactions in question can be subdivided into three categories:

(1) Trailers were loaded in Waukegan, Illinois, with freight which originated within Illinois. Plaintiff's equipment moved these trailers from Waukegan to plaintiff's terminal in Chicago. There the trailers were unloaded and freight was sorted and loaded into other trailers consigned to destinations outside of Illinois.

(2) Additional trailers were loaded at plaintiff's terminal in Chicago with freight which had its origin outside of Illinois. Plaintiff's equipment transported the trailers to Elgin, Illinois. There, the freight was unloaded and placed on other vehicles, apparently not operated by plaintiff, for delivery to various points within Illinois.

(3) In the third category, one trailer was loaded at plaintiff's terminal in Elgin, Illinois, and transported by plaintiff's equipment to plaintiff's Chicago terminal. There, the trailer was unloaded.

The legal nature of these various categories and their classification into intrastate or interstate commerce depends upon a proper interpretation of the applicable statutes. These enactments have remained the same from 1971 to this date. The statute provides (Ill. Rev. Stat. 1973, ch. 95½, par. 3—402A):

" ° ° ° 'Intrastate' or 'intrastate commerce' means transportation originating at any point or place within this State and destined to any other point or place within this State, irrespective of the route, highway or highways traversed, and including transportation which passes into or through another State before delivery is made within this State, and including any act of transportation which includes or completes a pickup within Illinois for delivery within Illinois.

'Interstate' or 'interstate commerce' means transportation

between 2 or more States or transportation originating in one State and passing into or through other States for delivery in another State, and which is not 'intrastate'."

See also Ill. Rev. Stat. 1973, ch. 95½, pars. 1—133, 1—134.

Defendant is vested with the power and duty of administering the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 2—101). This includes power to promulgate rules and regulations as necessary to carry out the law in the public interest. (Ill. Rev. Stat. 1975, ch. 95½, par. 2—104(b).) During the years 1971 and 1972, which are involved in this appeal, a rule adopted by defendant provided (Rule 3—402C):

"The following movements of commercial vehicles are all deemed but without limitation, to be 'intrastate', and must be made with motor vehicles properly registered in Illinois:

A. Movements of a laden semitrailer and/or trailer from any Illinois point or from any terminal or dock at a rail, water or air facility within Illinois to any Illinois destination.

B. Transportation of property, cargo or freight from any Illinois point of origin, such as a dock, terminal, warehouse or point of assembly or manufacture or storage, to any Illinois destination, though such may have originally been brought into Illinois from out-of-state and deposited at such point within Illinois.

C. Transportation of property, cargo or freight from any Illinois point of origin to an Illinois dock, terminal or warehouse for subsequent reloading or further transport.

D. Transportation wherein cargo or freight is loaded within Illinois for an Illinois destination onto any motor vehicle, semitrailer and/or trailer otherwise engaged in 'interstate' operation."

In our opinion, all three of the categories of operations here involved come squarely within the statutory definition of intrastate commerce. In all cases, the transportation that we are dealing with involved movement of freight by plaintiff's equipment from points within Illinois for delivery to other points within Illinois; sometimes for reloading for further transport. In addition, each and all of the transportation here involved constituted intrastate commerce in accordance with one or more subsections of the defendant's rule above quoted.

In this regard it is our opinion that the case before us is governed by our decision in *Blue Arrow Douglas, Inc. v. Howlett* (1977), 54 Ill. App. 3d 230, 369 N.E.2d 272. There, a shipment was loaded at the Blue Arrow Chicago terminal. Blue Arrow equipment moved the shipment to Bedford Park, Illinois. There, the shipment was to be reloaded and

transported by Chippewa Freight to its ultimate destination in Cumberland, Wisconsin. We held that this was an intrastate movement. (See *Blue Arrow*, 54 Ill. App. 3d 230, 233.) The *Blue Arrow* situation took place in August 1974. The statutes defining intrastate commerce, cited in the *Blue Arrow* opinion, are the same as those applicable to the case before us. The rule of the Secretary of State applicable there was slightly different from the rule above quoted (see *Blue Arrow*, 54 Ill. App. 3d 230, 233) but the basic principles remain unchanged.

Plaintiff urges that the operations here involved are exempt from assessment of Illinois taxes and fees even though all of them be construed as intrastate commerce. Plaintiff bases this argument upon statutory language which provides that vehicles which are part of an apportioned fleet operating under reciprocal agreements between States, such as the vehicles involved in the case before us, "may conduct an intrastate operation incidental to their interstate operations." (Ill. Rev. Stat. 1973, ch. 95½, par. 3—402B(3)(d).) Plaintiff argues that the defendant has conceded that prorate carriers were authorized by the statute, effective January 1, 1973, to make intrastate movements incidental to the interstate operations of their prorate fleet.

This argument presents its own refutation. The statute upon which plaintiff depends was not effective until January 1, 1973. All of the transportation movements involved here took place before this effective date.

■■ Confronted with this fact, resourceful counsel for plaintiff urge that the 1973 statute should be given retroactive effect. We reject this contention. One of the strongest maxims of statutory construction is that, "Legislative enactments are, in the absence of express language which provides otherwise, construed as prospective and not retrospective." (*Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 24, 268 N.E.2d 26, quoted in *In re Estate of Krotzsch* (1975), 60 Ill. 2d 342, 345, 326 N.E.2d 758.) This maxim has been referred to as "familiar doctrine" (*Vendo Company v. Stoner* (1974), 58 Ill. 2d 289, 310, 321 N.E.2d 1, *cert. denied* (1975), 420 U.S. 975, 43 L. Ed. 2d 655, 95 S. Ct. 1398.) We hold that the 1973 enactment should not be given retroactive effect and it is not applicable to the situation before us.

In addition, the 1971 statute applicable here, as well as the 1973 enactment, provided an exception from compliance with Illinois regulations only if the operator "did not break bulk of the cargo" in such inbound or outbound trailer or semitrailer and "Adding or unloading intrastate cargo shall be deemed as breaking bulk." (Compare Ill. Rev. Stat. 1971, ch. 95½, par. 3—402B(3)(d), and Ill. Rev. Stat. 1973, ch. 95½, par. 3—402B(3)(d); see *Blue Arrow*, 54 Ill. App. 3d 230, 234.) In the case

before us, in each of the transportation movements, bulk was broken by unloading within Illinois of each trailer involved in all of the categories above described.

We accordingly conclude that the result reached by the hearing officer of defendant was proper. The order of the trial court appealed from is reversed and the cause is remanded with directions for the entry of an order affirming the administrative order appealed from.

Order reversed and cause remanded with directions.

McGLOON and O'CONNOR, JJ., concur.