JAMES MORGAN, Plaintiff-Appellant, v. THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND, Defendant-Appellee.

First District (3rd Division)   No. 87—1925

Opinion filed June 29, 1988.

Joseph V. Roddy and Thomas J. Pleines, both of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Jeffrey Paul Smith, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The circuit court of Cook County affirmed the administrative decision of defendant, the Retirement Board of the Policemen's Annuity and Benefit Fund, denying the application of plaintiff, James Morgan, a Chicago police officer, for duty disability benefits under section 5—101 et seq. of the Illinois Pension Code (Ill. Rev. Stat. 1983, ch. 108½, par. 5—101 et seq.).

Plaintiff was on duty at the Grand Crossing District police station on January 15, 1984. At that time he was assigned to the front desk. A citizen entered the station and plaintiff proceeded to take a police report from him. Apparently while doing so, plaintiff was seated in a chair with casters. Plaintiff arose from the chair to hand some items of identification back to the person from whom he was taking the information for the police report. When he attempted to sit down in the chair, it rolled away from him and plaintiff struck the chair and/or floor with his head, neck and back. It is not disputed that as a result of his injuries plaintiff was no longer able to perform the duties of a Chicago police officer.

Defendant denied plaintiff's duty disability claim, concluding that he was entitled only to ordinary disability benefits "in that his injuries were not sustained as a consequence of an act of duty as defined by" section 5—113 of the Pension Code. (Ill. Rev. Stat. 1983, ch. 108½, par. 5—113.) Specifically, defendant determined that plaintiff's act of attempting to sit on a chair which rolled away from him did not fall within the meaning of that section. The circuit court of Cook County affirmed this decision on the ground that the activity which led to plaintiff's injury was one ordinarily assumed by a citizen in the ordinary walks of life, not one involving a special risk, as those phrases are used in section 5—113. The court also found the facts of this case distinguishable from those in *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1985), 137 Ill. App. 3d 546, 484 N.E.2d 1250, *aff'd* (1986), 114 Ill. 2d 518, 502 N.E.2d 718.

Section 5—154 of the Illinois Pension Code establishes, *inter alia*, the right of a police officer covered by article 5 of the Code to receive a "duty disability benefit" equal to 75% of his salary at the time the disability is allowed where the disability results from injury incurred

"in the performance of an act of duty." (Ill. Rev. Stat. 1983, ch. 108½, par. 5—154.) Section 5—155 of the Code, in contrast, provides that an officer disabled as the result "of any cause other than *** an act of duty" is to receive an "ordinary disability benefit" of 50% of his salary at the time the disability occurs. (Ill. Rev. Stat. 1983, ch. 108½, par. 5—155.) Section 5—113 defines an "[a]ct of duty" as, *inter alia*:

> "Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment ***." Ill. Rev. Stat. 1983, ch. 108½, par. 5—113.

On appeal, plaintiff contends that he is entitled to a duty disability benefit because he sustained his injuries in the performance of an act of duty as that term is defined in section 5—113. We disagree.

Section 5—113 was most recently construed in *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1986), 114 Ill. 2d 518, 502 N.E.2d 718. Therein, a Chicago police officer assigned to direct traffic at a downtown intersection suffered a disabling injury when he slipped and fell while crossing the intersection to investigate a traffic accident. The defendant board denied the plaintiff duty disability benefits on the ground that the mere act of crossing the street while directing traffic was not an act of duty qualifying him for such benefits. On appeal, the board contended that the phrase "inherently involving special risk" qualified the phrase "act of duty" to include only inherently dangerous acts and that the mere act of crossing the street did not involve a special risk not ordinarily assumed by a citizen.

In affirming the appellate court's reversal of the denial of duty disability benefits, the supreme court stated:

> "We do not find anything in the statute or in its legislative history to support the defendant's strained construction that the term 'special risk' only encompasses 'inherently dangerous' activities. Police officers assigned to duties that involve protection of the public discharge those duties by performing acts which are similar to those involved in many civilian occupations. Driving an automobile, entering a building, walking up stairs, and even crossing the street are activities common to many occupations, be it policeman or plumber.
>
> *** The crux is the capacity in which the police officer is acting.

* * *

The defendant's ultimate reliance on the fact that the plaintiff was 'traversing a street' when he was injured is misplaced. The provisions of section 5—154 of the Illinois Pension Code [citation] conferring the right to duty-disability benefits do not require that an officer be injured *by* an act of duty. Rather, the duty disability is awarded when an officer is 'disabled *** as the result of injury incurred *** *in the performance of an act of duty*.' (Emphasis added.) [Citation.] In the plaintiff's case, the act of duty was the act of responding to the call of a citizen for assistance. In performing that act, he was injured.

The defendant's interpretation envisions a police officer involved in a gun battle, a high-speed car chase, or some other obviously dangerous situation in order to qualify for duty-disability benefits. This is an overly restrictive and unrealistic interpretation. If this court were to adopt the defendant's narrow reading of section 5—113, it could discourage police officers from the dedicated and enthusiastic performance of their duties, to the detriment of all the citizens of Chicago." *Johnson*, 114 Ill. 2d at 521-23.

■ We believe, as plaintiff asserts, that *Johnson* controls the disposition of this case. However, we do not believe that it requires the conclusion that he is entitled to duty disability benefits. Rather, we agree with defendant that the supreme court's decision in *Johnson* preserves the requirement that an act of duty be something involving a risk not shared by ordinary citizens. In addition to the foregoing language, the supreme court also stated that "[t]here is no comparable civilian role to that of a traffic patrolman responding to the call of a citizen," and that a police officer has a "duty to respond regardless of the hazard ultimately encountered." (*Johnson*, 114 Ill. 2d at 522.) Thus, the court was, we believe, reaffirming the existence of the special risk element in acts of duty and the distinction between such acts and "any cause other than" such acts when entitlement to disability benefits is at issue.

■ Unlike the supreme court's conclusion regarding the duties of a traffic patrolman, we cannot conclude that there is no comparable civilian occupation to that of a policeman filling out a police report. While no civilian occupation may involve completing police reports, countless civilian occupations do involve the completion of reports of one type or another. Moreover, we take judicial notice of the fact that, while completing such reports, many civilians sit or attempt to sit in chairs. As such, we cannot say that completing police reports, albeit a

function peculiar to police officers, inherently involves special risk not ordinarily assumed by a citizen in the ordinary walks of life.

Our conclusion that *Johnson* does not require that plaintiff be awarded duty disability benefits is buttressed by the observation in Justice Ryan's dissent in *Johnson*. Justice Ryan noted that under the majority opinion "almost all policemen, *excepting those engaged in clerical duties*, who are injured at work will be entitled to the enhanced pension." (Emphasis added.) *Johnson*, 114 Ill. 2d at 525 (Ryan, J., dissenting, joined by Miller, J.).

*Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595, 505 N.E.2d 1387, also reinforces our belief that injuries resulting from risks comparable to those encountered in civilian occupations are not compensable as resulting from acts of duty. In *Olson*, the plaintiff's disability resulted from job-related stress caused by differences in management style with his superior, charges brought against him and his assignment to patrol although he had attained the rank of sergeant. The court concluded that plaintiff's stress had not resulted from his performance of an act of duty as defined by section 5—113. The court noted that "[c]ivilians regularly suffer stress in their employment resulting from conflicts with their superiors, complaints that are filed against them in connection with their jobs, and the assignment of tasks which they deem unsuitable for their position. Finally, the court concluded that plaintiff was not disabled while " 'he was engaged in activities related to his duty as a police officer to protect and serve the public.' " *Olson*, 153 Ill. App. 3d at 599, quoting *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1985), 137 Ill. App. 3d 546, 548, 484 N.E.2d 1250.

For all of the foregoing reasons, the judgment of the circuit court of Cook County affirming the denial of duty disability benefits to plaintiff is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.