NO. 4-07-0687          Filed 9/15/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| PATRICK JONES, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|        v. | ) | McLean County |
| THE BOARD OF TRUSTEES OF THE POLICE | ) | Nos. 06MR243 |
| PENSION FUND OF THE CITY OF | ) |     06MR276 |
| BLOOMINGTON; an Illinois Administra- | ) | |
| tive Agency and KAREN BAKER, DAN | ) | |
| DONATH, CHARLES CROW, FRANK HAINES, | ) | |
| and CURT OYER, Members of the Board | ) | Honorable |
| of Trustees, | ) | Charles G. Reynard, |
|     Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

Plaintiff, Patrick Jones, applied to the Board of Trustees of the Police Pension Fund of the City of Bloomington (Board) for a disability pension pursuant to article III of the Illinois Pension Code (Pension Code) (40 ILCS 5/3-101 through 3-152 (West 2006)). The Board denied Jones a line-of-duty disability pension but granted him a nonduty disability pension.

In August and October 2006, Jones filed complaints for administrative review naming the Board and members of the Board--Karen Baker, Dan Donath, Charles Crow, Frank Haines, and Curt Oyer--all collectively referred to as "the Board," as defendants.

On administrative review, the circuit court reversed the Board's decision. The Board appeals, arguing that its decision to deny Jones a line-of-duty disability pension was

proper because Jones was not disabled as the result of an injury incurred in the performance of an act of duty. We disagree and affirm the circuit court's reversal of the Board's decision.

## I. BACKGROUND

On February 24, 2006, Jones filed an application for disability benefits. Jones alleged he could no longer perform full duties as a police officer due to an injury received in a automobile accident that occurred while Jones was on duty.

On July 26, 2006, the Board held a hearing on the application. At the hearing, the Board admitted into evidence the application for benefits, the notice of hearing, the job description for patrol officer, the employee-injury report, the Illinois traffic-crash report, the incident report, medical records, and the independent medical-examination reports from three doctors.

Jones testified that he had been a patrol officer for the City of Bloomington for 12 years. On June 13, 2005, at approximately 8 a.m., Jones was involved in a motor-vehicle accident. Jones was on routine patrol in unit 51, the transport van, which Jones described as a one-ton Chevrolet van. The record does not reflect whether the van was a marked police vehicle. However, the accident report indicates the vehicle was black and white.

When asked where he was headed when the accident

- 2 -

occurred, Jones testified:

> "I was going out towards Airport Road,
> which I believe they had complaints about
> some speeders or whatever. I was just on
> routine patrol, just to investigate something
> of that nature."

As Jones drove toward Airport Road, a man driving a Buick "shot out" in front of Jones' vehicle. Jones made an evasive maneuver that kept from hitting the Buick broadside. Due to oncoming traffic, however, Jones had to pull back into the right-hand lane. The Buick then hit the side of the transport van. Jones suffered injuries to his shoulder and back and later underwent back surgery. The Board adjourned after the hearing.

On August 30, 2006, Jones filed a complaint for administrative review in McLean County case No. 06-MR-243. The complaint alleged that the Board had not yet filed a decision on Jones' application for a line-of-duty disability pension. The complaint further alleged that the president of the Board told Jones, ex parte, that the Board was granting Jones a nonduty disability pension. Defendants filed as their answer a copy of the administrative record.

On September 20, 2006, the Board issued its written decision. The Board found Jones physically disabled for service in the police department so as to render necessary his retire-

ment.  The Board concluded, however, that Jones' disability was a nonduty disability pursuant to section 3-114.2 of the Pension Code (40 ILCS 5/3-114.2 (West 2006)) rather than a line-of-duty disability pension (40 ILCS 5/3-114.1(a) (West 2006)).  The Board concluded, relying primarily on White v. City of Aurora, 323 Ill. App. 3d 733, 753 N.E.2d 1244 (2001), that Jones was not entitled to a line-of-duty disability pension because driving a van did not involve a "special risk" as required by the definition of "act of duty."  As such, the Board awarded Jones a pension totaling 50% of his salary as opposed to the 65% he would have received from a line-of-duty disability pension.

On October 19, 2006, Jones filed a second complaint for administrative review in McLean County case No. 06-MR-276.  This complaint alleged the Board issued its written decision on September 20, 2006, awarding Jones only a nonduty pension.  Jones sought reversal of the Board's decision and an award of a line-of-duty pension.

In November 2006, defendants filed an answer in case No. 06-MR-276 and a motion to dismiss case No. 06-MR-243.  In February 2007, the parties stipulated and agreed to consolidate the two cases.  On February 19, 2007, the trial court consolidated the two cases.

In July 2007, the trial court entered a written order reversing the Board's decision.  The court entered judgment for

Jones, finding him eligible for a line-of-duty pension.

This appeal followed.

## II. ANALYSIS

On appeal, the Board argues that its decision to deny Jones a line-of-duty pension was proper because Jones was not disabled as the result of an injury incurred in the performance of an act of duty.

### A. Standard of Review

This court reviews the Board's decision, not the decision by the circuit court. Marconi v. Chicago Heights Police Pension Board, 225 Ill. 2d 497, 531, 870 N.E.2d 273, 292 (2006). The parties dispute the appropriate standard of review. The Board argues it was required to weigh the evidence and make factual determinations when considering whether Jones sustained his burden of proof to establish that his disability arose from an "act of duty." Therefore, the Board argues, the manifest-weight-of-the-evidence standard is the appropriate standard of review. Jones argues that where the relevant facts are undisputed, and the dispute hinges on the term "act of duty," this court's review is de novo. .

The applicable standard of review depends upon whether the issue presented is one of fact, one of law, or a mixed question of law and fact. Marconi, 225 Ill. 2d at 532, 870

N.E.2d at 292. This court will reverse a ruling on a question of fact only if it is against the manifest weight of the evidence. Marconi, 225 Ill. 2d at 532, 870 N.E.2d at 292-93. Questions of law are reviewed de novo. Marconi, 225 Ill. 2d at 532, 870 N.E.2d at 293. Mixed questions of law and fact are reviewed under the clearly erroneous standard. Marconi, 225 Ill. 2d at 532, 870 N.E.2d at 293.

Here, the issue is whether this case involves (1) the interpretation of the statutory term "act of duty," which requires de novo review, or (2) an examination of the legal effect of a given set of facts, which is a mixed question of law and fact requiring review under the clearly erroneous standard. See Sarkis v. City of Des Plaines, 378 Ill. App. 3d 833, 836, 882 N.E.2d 1268, 1270 (2008) (examining whether an officer injured while lifting a malfunctioning railroad crossing gate was injured in the performance of an act of duty). Under the clearly erroneous standard, the reviewing court will reverse the administrative agency only where the court is "'left with the definite and firm conviction that a mistake has been committed.'" AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 395, 763 N.E.2d 272, 282 (2001), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

Courts have generally held that when the facts are

undisputed, the interpretation of the term "act of duty" in the Pension Code is an issue of statutory construction to be reviewed de novo. See Sarkis, 378 Ill. App. 3d at 836, 882 N.E.2d at 1270; White, 323 Ill. App. 3d at 735, 753 N.E.2d at 1246 (where the facts are undisputed, and the Board interpreted the meaning of "act of duty" contained in the statute, the issue was one purely of statutory interpretation); Fedorski v. Board of Trustees of the Aurora Police Pension Fund, 375 Ill. App. 3d 371, 373, 873 N.E.2d 15, 17 (2007) (finding the dispute hinged on the determination of "act of duty" and, therefore, de novo review applied); Alm v. Lincolnshire Police Pension Board, 352 Ill. App. 3d 595, 598, 816 N.E.2d 389, 391 (2004) (de novo review applied where the facts were undisputed and the only issue was the meaning of "act of duty"). However, in Merlo v. Orland Hills Police Pension Board, No. 1-06-3729 (June 4, 2008), ___ Ill. App. 3d ___, ___, 890 N.E.2d 612, 615 (2008), on what appeared to be undisputed facts, the appellate court found that the issue of whether the police officer was performing an act of duty presented a mixed question of fact and law, and therefore the clearly erroneous standard of review applied. See also Provena Covenant Medical Center v. Illinois Department of Revenue, No. 4-07-0763, slip op. at 7 (August 26, 2008), ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___ (applying the clearly erroneous standard where the facts were undisputed and the question was whether

- 7 -

those facts entitled the plaintiff to an exemption under the Property Tax Code).

This court tends to agree with the Merlo court, that an examination of the legal effect of a given set of facts presents a mixed question of fact and law, requiring the clearly erroneous standard of review. See also City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). However, under either the de novo or clearly erroneous standard, Jones is entitled to a line-of-duty pension.

The primary consideration in construing a statute is to determine and give effect to the legislature's intent. People v. Skillom, 361 Ill. App. 3d 901, 906, 838 N.E.2d 117, 122 (2005). A court must consider the statute in its entirety. People v. Davis, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002). "The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition." Davis, 199 Ill. 2d at 135, 766 N.E.2d at 644. "Pension statutes are to be liberally construed in favor of the pensioner." Harroun v. Addison Police Pension Board, 372 Ill. App. 3d 260, 263, 865 N.E.2d 273, 277 (2007).

B. Jones Is Entitled to a Line-of-Duty Pension

1. Eligibility for Line-of-Duty Pension Depends Upon Whether the Officer's Injury Occurred as a Result of the Performance of an Act of Duty

- 8 -

Section 3-114.1(a) of the Pension Code provides for a pension equal to 65% of the officer's salary if the officer becomes disabled as a result of "the performance of an act of duty." 40 ILCS 5/3-114.1(a) (West 2006). Specifically, section 3-114.1(a) provides, in relevant part, as follows:

> "If a police officer as the result of sickness, accident[,] or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension equal to *** 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement." 40 ILCS 5/3-114.1(a) (West 2006) (entitled "Disability pension--Line of duty").

If, however, a police officer "becomes disabled as a result of any cause other than the performance of any act of duty," he or she is entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement. 40 ILCS 5/3-114.2 (West 2006)

- 9 -

(entitled "Disability pension--Not on duty").

Something more than being "on duty" is required to receive a line-of-duty pension.  Sarkis, 378 Ill. App. 3d at 837, 882 N.E.2d at 1271 ("An officer does not perform an 'act of duty' merely by being on duty at the relevant time").  Although article III of the Pension Code, pertaining to police pension funds in municipalities with populations under 500,000, does not contain a definition of "act of duty," article V of the Pension Code, pertaining to police pension funds in municipalities with populations exceeding 500,000, does.  See 40 ILCS 5/5-113 (West 2006). The act-of-duty definition contained in article V of the Pension Code applies to the use of that term in article III.  See Robbins v. Board of Trustees of the Carbondale Police Pension Fund, 177 Ill. 2d 533, 541, 687 N.E.2d 39, 43-44 (1997).  Section 5-113 defines "act of duty" as follows:

> "Any act of police duty inherently in-
> volving special risk, not ordinarily assumed
> by a citizen in the ordinary walks of life,
> imposed on a policeman by the statutes of
> this State or by the ordinances or police
> regulations of the city in which this
> [a]rticle is in effect or by a special as-
> signment; or any act of heroism performed in
> the city having for its direct purpose the

- 10 -

saving of the life or property of a person other than the policeman."  40 ILCS 5/5-113 (West 2006).

Not all police functions involve "special risk."  See, e.g., Morgan v. Retirement Board of the Policeman's Annuity & Benefit Fund, 172 Ill. App. 3d 273, 277, 526 N.E.2d 493, 496 (1988) (holding that an officer who was injured in fall from chair while taking a police report at the front desk of the police station was not entitled to line-of-duty pension because the act of taking a police report did not involve a special risk not ordinarily assumed by an ordinary citizen).  However, "special risk" is not limited to "'inherently dangerous' activities."  Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund, 114 Ill. 2d 518, 521, 502 N.E.2d 718, 720 (1986).

In Johnson, a police officer on traffic-control duty slipped and fell while crossing the street in response to a citizen's request for assistance.  Johnson, 114 Ill. 2d at 520, 502 N.E.2d at 719.  The supreme court rejected the argument that the officer did not assume a special risk because he merely crossed the street as any ordinary citizen would do. Johnson, 114 Ill. 2d at 520, 502 N.E.2d at 719.  Instead, the supreme court focused on the capacity in which the officer was acting at the time of injury.  Johnson, 114 Ill. 2d at 521-22, 502 N.E.2d at 720.

- 11 -

The supreme court found that the officer performed an "act of duty" because when he suffered the injury, the officer was discharging his sworn duties by responding to a citizen's call. Johnson, 114 Ill. 2d at 522, 502 N.E.2d at 720. The officer had no choice but to respond, and no comparable civilian occupation existed. Johnson, 144 Ill. 2d at 522, 502 N.E.2d at 720 (noting that an officer responding to a citizen "must have his attention and energies directed towards being prepared to deal with any eventuality").

The supreme court also noted that for a line-of-duty pension, the officer need not be injured "by [the] act of duty" but rather that the injury occur "'in the performance of an act of duty.'" (Emphasis in original.) Johnson, 114 Ill. 2d at 522, 502 N.E.2d at 720, quoting Ill. Rev. Stat. 1983, ch. 108 1/2, par. 5-154 (now 40 ILCS 5/5-154.1 (West 2006)). The court concluded that the officer's "act of duty was the act of responding to the call of a citizen for assistance." Johnson, 114 Ill. 2d at 522, 502 N.E.2d at 720. While performing that duty, the officer was injured. Johnson, 114 Ill. 2d at 522, 502 N.E.2d at 720. As such, he was eligible for a line-of-duty disability pension. Johnson, 114 Ill. 2d at 522, 502 N.E.2d at 720.

Since Johnson, courts have found the police officer injured in the performance of an act of duty where the officer (1) fell through a porch while serving a notice to appear (Wagner

- 12 -

v. Board of Trustees, 208 Ill. App. 3d 25, 29, 566 N.E.2d 870, 873 (1991)); (2) was riding a bicycle on patrol (Alm, 352 Ill. App. 3d at 601, 816 N.E.2d at 394); (3) injured his shoulder while raising a railroad crossing gate (Sarkis, 378 Ill. App. 3d at 841, 882 N.E.2d at 1274); and (4) responded to a civilian call reporting juveniles stacking concrete parking blocks in a parking lot and suffered an injury when he attempted to remove the hazard by unstacking the concrete blocks (Merlo, slip op. at 2, ___ Ill. App. 3d at ___, 890 N.E.2d at 617). Other courts have found the officer was not injured in the performance of an act of duty where (1) the officer was injured when he attempted to sit down in a chair at his desk to fill out a police report and the chair rolled out from underneath him (Morgan, 172 Ill. App. 3d at 276-77, 526 N.E.2d at 496); (2) the officer was injured while exiting his police vehicle to place a parking citation on an illegally parked car (White, 323 Ill. App. 3d at 736, 753 N.E.2d at 1247 (where police department also employed civilians to issue parking citations)); and (3) the evidence technician was injured when the unmarked police vehicle in which he was riding as a passenger was struck while stopped at a red light (Fedorski, 375 Ill. App. 3d at 375, 873 N.E.2d at 19). This court has never addressed whether an officer injured while on patrol duty was injured in the performance of an act of duty and entitled to a line-of-duty pension.

2. <u>Jones Was Injured in the Performance of an Act of Duty</u>

The Board argues Jones only encountered the general risks attendant to driving a car and driving the vehicle on routine patrol did not involve a special risk.  The Board relied below and relies on appeal on <u>White</u>, 323 Ill. App. 3d 733, 753 N.E.2d 1244, to conclude that Jones was not eligible for a line-of-duty disability pension.

In <u>White</u>, a divided panel of the Appellate Court, Second District, concluded that the officer was not entitled to a line-of-duty disability pension.  <u>White</u>, 323 Ill. App. 3d at 736, 753 N.E.2d at 1247.  The officer, who was on patrol, slipped while exiting his vehicle to place a parking citation on an illegally parked vehicle.  <u>White</u>, 323 Ill. App. 3d at 734, 753 N.E.2d at 1245.  Although the police department required its officers to issue parking tickets, the department also employed civilians to issue tickets.  <u>White</u>, 323 Ill. App. 3d at 736, 753 N.E.2d at 1247.

The <u>White</u> court concluded that exiting a vehicle to place a traffic ticket on an illegally parked car did not involve a special risk not assumed by ordinary citizens.  <u>White</u>, 323 Ill. App. 3d at 736, 753 N.E.2d at 1247.  The court noted such an act, exiting a vehicle to place a flyer or notice on another vehicle, is one performed by ordinary citizens.  <u>White</u>, 323 Ill. App. 3d at 736, 753 N.E.2d at 1247.

- 14 -

Approximately three years later, another divided panel of the Second District specifically rejected White and found that the majority in White focused on the act performed rather than the capacity in which the officer was acting. Alm, 352 Ill. App. 3d at 602, 816 N.E.2d at 395. In Alm, the officer injured his knee while pedaling a bicycle on bicycle patrol, although the injury was not the result of any "specific, identifiable, physical trauma." Alm, 352 Ill. App. 3d at 601, 816 N.E.2d at 394.

The Alm court rejected the argument that the officer was simply riding a bicycle. Alm, 352 Ill. App. 3d at 602, 816 N.E.2d at 394. Instead, the court noted that the focus was not on the specific act at the time of the injury--riding a bike--but on the capacity in which the officer was acting--bicycle patrol officer. Alm, 352 Ill. App. 3d at 602, 816 N.E.2d at 394. The Alm court found that in the capacity of bicycle patrol officer, the officer faced special risks not faced by ordinary citizens, including (1) riding the bicycle at night over varying terrain; (2) looking out for his own personal safety while also remaining diligent in the performance of his patrol duties; and (3) carrying a significant amount of additional weight. Alm, 352 Ill. App. 3d at 601, 816 N.E.2d at 393. These facts elevated the risks of falls, collisions, and dangerous encounters. Alm, 352 Ill. App. 3d at 601, 816 N.E.2d at 393. As such, even though the officer did not face those special risks at the exact time he

suffered the injury, the officer was performing an act of duty when he suffered his injury and was entitled to line-of-duty benefits.  Alm, 352 Ill. App. 3d at 601, 816 N.E.2d at 393.

We agree with the reasoning of Alm and reject the reasoning of White.  As stated by the supreme court in Johnson, the "crux is the capacity in which the officer was acting."  Johnson, 114 Ill. 2d at 522, 502 N.E.2d at 720.  In White, the court improperly focused on the specific act--exiting a car--and not the capacity in which the officer was acting.

In the instant case, as in Alm, the capacity in which Jones was acting when he was injured was one involving special risk.  The job description for a patrol officer, which was part of the administrative record, provides:

> "The job of [p]atrol [o]fficer is general duty police work in the protection of life and property and the enforcement of laws and ordinances.  The work involves preventive patrol, preliminary investigation, traffic enforcement and regulation, and preservation of social order and public peace by means of patrolling in cars or on foot in a designated area where the officer is accountable."

Among the listed duties and skills, the patrol officer must (1) "[p]ossess safety-minded driving ability and be conscious of all

types of road conditions either in the course of normal patrol or when responding to emergency call by use of the red light and siren" and (2) control and regulate vehicular and pedestrian traffic as needed. The job description also recognizes that a patrol officer is a "visible and tangible around-the-clock representative of the city government process and can be summoned to respond on short notice" and is expected by citizens to provide a variety of social services. Such social services include assisting persons who have no one to whom they can turn to for help, mediating neighborhood conflicts, maintaining "constant vigilance" patrolling assigned areas, helping stranded motorists, providing transportation services for those in need, and giving directions to out-of-town motorists.

While job title alone is insufficient to establish performance of an act of duty (Fedorski, 375 Ill. App. 3d at 375, 873 N.E.2d at 19), Jones was performing the duties of patrol officer at the time of the injury, and those duties involved special risk. As the job description reflects, Jones had to, like the officer in Johnson, have his "attention and energies directed toward being prepared to deal with any eventuality." Johnson, 114 Ill. 2d at 522, 502 N.E.2d at 720. Like the officer in Alms on bicycle patrol, Jones faced special risks on patrol, risks not assumed by the ordinary citizen driving down the street. Those risks included being prepared to respond to

emergency calls, deterring crime, responding to citizen requests, controlling and regulating traffic, and maintaining constant vigilance. Moreover, Jones testified he was going to investigate complaints about speeders on Airport Road.

The Board asserts that Jones only encountered the general risk attendant to driving a car. But even if driving a car involves only an ordinary risk, Jones was acting in a capacity that involved special risk when he was injured--routine patrol. See, e.g., Fedorski v. Board of Trustees of the Aurora Police Pension Fund, 375 Ill. App. 3d 371, 873 N.E.2d 15 (2007) (noting that the fact that the injury could have befallen anyone traveling in an automobile does not by itself foreclose a line-of-duty disability pension; the focus is not on the mechanism of the injury but on the capacity in which the officer was acting while injured).

The Board also argues this case is almost identical factually to Fedorski, 375 Ill. App. 3d 371, 873 N.E.2d 15, another Appellate Court, Second District, case that denied the officer a line-of-duty pension. However, Fedorski is distinguishable on its facts.

In Fedorski, the plaintiff, an evidence technician, was riding as a passenger in an unmarked police car when it was struck from behind at a red light. Fedorski, 375 Ill. App. 3d at 372, 873 N.E.2d at 16. The plaintiff was returning to the police

station after assisting in a murder investigation and taking photographs for a lineup. Fedorski, 375 Ill. App. 3d at 372, 873 N.E.2d at 16. He planned to contact the State's Attorney, enter evidence, and complete a report once he returned to the station. Fedorski, 375 Ill. App. 3d at 372, 873 N.E.2d at 16.

The appellate court determined the plaintiff was not entitled to a line-of-duty disability because he was not acting in a capacity that entailed any special risk when the injury occurred. Fedorski, 375 Ill. App. 3d at 375, 873 N.E.2d at 19 (but also noting that the decision was consistent with White). The plaintiff was not performing any activity relating to his duties as an evidence technician that created a special risk not ordinarily assumed by any automobile passenger. Fedorski, 375 Ill. App. 3d at 376, 873 N.E.2d at 20.

In contrast, Jones was performing an act of police duty involving a special risk. See 40 ILCS 5/5-113 (West 2006) (defining "act of duty"). Jones was driving a police transport van on patrol intending to investigate an area that had reports of speeders. Although Jones was not responding to a call, he was conducting his patrol and an investigation, and he did face special risks associated with being on patrol duty. See, e.g., Senese v. Village of Buffalo Grove, No. 2-07-1017, slip op. at 1-2 (June 5, 2008), ___ Ill. App. 3d ___, ___, 890 N.E.2d 628, 629 (2008) (although involving another issue, noting that the police

- 19 -

officer received a line-of-duty pension after being injured when, while monitoring traffic, his parked squad car was struck from behind by another vehicle). Jones had to have his attention directed toward being prepared to deal with any eventuality. Applying the liberal construction of pension statutes in favor of the pensioner, Jones is entitled to a line-of-duty pension.

## III. CONCLUSION

For the reasons stated, we affirm the circuit court's judgment reversing the Board.

Affirmed.

KNECHT and TURNER, JJ., concur.